UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY MICHAEL SANDERS,

                  Petitioner,           Case Number: 2:17-cv-12248
                                                Honorable George Caram Steeh

      v.

RANDEE REWERTS,[1]

                  Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Timothy Michael Sanders filed a habeas petition under 28 U.S.C. § 2254.   Petitioner, who is presently incarcerated at the Carson City Correctional Facility in Carson City, challenges his convictions for second-degree murder, MICH. COMP. LAWS § 750.317; assault with intent to commit murder, MICH. COMP. LAWS § 750.83, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b.

---

[1]The proper respondent in a habeas case is the state officer having custody of the petitioner. See Rule 2, Rules Governing Section 2254 Cases. The warden of Petitioner's present place of incarceration is Randee Rewerts. The Court therefore amends the case caption to substitute Randee Rewerts as the Respondent.

Petitioner raises four grounds for relief.    For the reasons explained below, the Court denies the petition.    The Court also denies a certificate of appealability.

## I.    Background

The Michigan Court of Appeals summarized the evidence presented at trial as follows:

> This case arises out of a fatal shooting on January 16, 2012. Shortly before 3:00 p.m., Darryl Smith heard a commotion and went outside his home to see what was happening.   He saw some women fighting in the street.   Darius Kendrick, who was Smith's stepfather, was pulling the female combatants apart. One of the women involved, Diamond Randall, called defendant, who was her cousin, and told him that she was upset about how Kendrick had thrown her to the ground while breaking up the fight.   After the fight broke up, defendant arrived at the scene in a Range Rover.   Smith knew defendant by his nickname, "Big Tim," and had seen him on several prior occasions.   Defendant spoke to some women near the scene of the fight, then approached Smith and Kendrick.   He was aggressive and told Kendrick "to keep his hands to his self." Smith and Kendrick backed away, but defendant produced a handgun from his right pocket and began to shoot, firing "[m]ore than seven" times.   Smith was shot once in the foot. Kendrick was fatally shot in the chest, stomach, and leg.   Defendant was "[a]bout three or four feet" from Smith and Kendrick when he shot them.   Smith testified that neither he nor Kendrick had a gun.   After the shooting, defendant ran back to the Range Rover and left the scene.   Smith had "no doubt" about his identification of defendant as the shooter.   When the police arrived, Smith told them that "Big Tim" had shot him.   Initially, defendant could not be located.   Eventually, he was arrested by the United States Marshals Service at a relative's home in Marion County, Ohio.

*People v. Sanders*, No. 314765, 2015 WL 5567977, at \*1 (Mich. Ct. App. Sept. 22, 2015)

Petitioner was convicted by a jury in Wayne County Circuit Court and sentenced to 30 to 50 years for second-degree murder, 15 to 25 years for assault with intent to commit murder, 2 to 10 years for carrying a concealed weapon, all to be served concurrently with one another and consecutively to 2 years for felony-firearm.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising three claims: (1) Petitioner was denied a fair trial by the admission of his prior criminal history; (2) Petitioner was denied the right to present a defense; and (3) the prosecutor committed misconduct.   Petitioner also filed a pro per supplemental brief seeking a new trial or evidentiary hearing based upon newly discovered evidence.   The Michigan Court of Appeals remanded the case for an evidentiary hearing in the trial court.   *People v. Sanders*, No. 314765 (Mich. Ct. App. May 21, 2014) (ECF No. 7-11, PageID. 1275.)

The trial court held an evidentiary hearing on August 1, 2014. Following the hearing, the trial court denied the motion for new trial. *People v. Sanders*, No. 12-008256-01 (Wayne County Cir. Ct. Sept. 22, 2014) (ECF No. 7-11, PageID.1283-87)   The Michigan Court of Appeals

- 3 -

then affirmed Petitioner's convictions.   *People v. Sanders*, No. 314765,

2015 WL 5567977, at *1 (Mich. Ct. App. Sept. 22, 2015).   The Michigan

Supreme Court denied Petitioner's application for leave to appeal.   *People*

*v. Sanders,* 499 Mich. 915 (2016).

Petitioner then filed this habeas petition, raising these claims:

I.      The trial court and the prosecutor violated Appellant's due
        process rights by introducing Appellant's inadmissible and
        highly prejudicial criminal history where the trial court read the
        charge of felon in possession of a firearm even though the
        district court had not bound Appellant over on that charge; and
        where the prosecutor elicited that one of the complainants had
        previously seen Appellant with a gun.

II.     The trial court violated Appellant's due process right to present
        a defense by declining to instruct the jury on voluntary
        manslaughter as a lesser offense, where there was evidence of
        provocation; furthermore, defense trial counsel was
        constitutionally ineffective in agreeing to the ruling.

III.    The prosecutor violated Appellant's due process rights and
        shifted the burden of proof by improperly asking if defense trial
        counsel had the opportunity to test casings recovered at the
        scene; and by commenting that Appellant failed to testify if
        Appellant had ever owned or fired a gun or explain where
        Appellant went after the shooting.

IV.     Petitioner should be granted a new trial based upon newly
        discovered evidence.

## II.      Standard

Upon the filing of a habeas corpus petition, the court must promptly

examine the petition to determine "if it plainly appears from the face of the

- 4 -

petition and any exhibits annexed to it that the petitioner is not entitled to relief."   Rule 4, Rules Governing Section 2254 cases.   If the court determines that the petitioner is not entitled to relief, the court shall summarily dismiss the petition.   *McFarland v. Scott*, 512 U.S. 849, 856 (1994)   ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face").   The habeas petition does not present grounds which may establish the violation of a federal constitutional right.   The petition will be dismissed.

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Harrington v. Richter*, 562 U.S.

86, 101 (2011).   To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Id.* at 103.

III.      Discussion

A.      Prior Acts Evidence

In his first claim, Petitioner alleges that his due process right to a fair trial was violated in two ways.[2]   First, he argues that, during jury selection, when the trial court read the charges to the jury, the trial court mistakenly stated that Petitioner charged with being a felon in possession of a firearm. This charge had been dismissed at the preliminary examination.   Defense counsel immediately asked for a bench conference.   (ECF No. 7-5, PageID.309.)   The trial court then corrected its error and reread the correct charges.   (*Id.*)

---

[2]   Respondent argues that both of these subclaims are waived, and that the first subclaim is procedurally defaulted.   "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."   *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).   "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."   *Lambrix*, 520 U.S. at 525.   In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

Second, during the trial, the prosecutor asked Darryl Smith whether he had ever seen Petitioner with a gun and Smith responded that he had. (ECF No. 7-6, PageID.658.)   Defense counsel objected.   Following a colloquy outside the jury's presence, the trial court sustained the objection, struck Smith's testimony, and instructed the jury to disregard it.   *Sanders*, 2015 WL 5567977 at *2.

The Michigan Court of Appeals held that neither of these incidents denied Petitioner a fair trial:

> Defendant's argument fails for a number of reasons.   First, the trial court's mistaken recitation of the felon-in-possession charge was not evidence; thus, defendant's proposed application of MRE 404(b) to the trial court's jury instruction is wholly inappropriate.   Second, the trial court immediately corrected its misstatement of the charges.   Third, defendant assumes that the jury inferred prior bad acts by defendant, but such an inference is unlikely. Although lawyers and judges may be familiar with the elements of felon-in-possession, most jurors are probably not.   That is, a typical juror would not have inferred defendant had a prior felony conviction that made him ineligible to possess a firearm although he possessed one. Fourth, the trial court administered proper jury instructions which cured any prejudice. Since jurors are presumed to follow their instructions, any unfair prejudice resulting from improper evidence of a defendant's prior bad acts can be dispelled by proper jury instructions. ... The trial court struck the testimony by Smith that defendant had previously possessed a firearm, and instructed the jury to disregard it.   Further, the jury was instructed (1) not to consider the trial court's comments or the fact that defendant was charged with crimes as evidence, (2) defendant was presumed innocent, (3) it should only consider properly admitted evidence, and (4) any stricken testimony

must be disregarded.   Thus, any prejudice to defendant was dispelled, and reversal is unwarranted.

*Sanders*, 2015 WL 5567977 at *2.

The Michigan Court of Appeals' decision was not contrary to or an unreasonable application of Supreme Court precedent.   As noted by the state court of appeals, the inclusion of the dismissed felon-in-possession charge was not evidence, the reference to the felon-in-possession charge was brief, and the error promptly corrected.   In light of these circumstances, the possibility that the error registered with or influenced the jury is highly implausible.   The same is true of Smith's testimony that he had previously seen Petitioner with a gun.   The testimony was stricken and the jury instructed not to consider the testimony.   "A jury is presumed to follow its instructions."   *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Further, during final instructions, the court advised the jury to consider only evidence that was properly admitted.   (ECF No. 7-8, PageID.1019.)   For these reasons, the Court holds that "fairminded jurists could [not] disagree" on the correctness of the Michigan Court of Appeals' resolution of these claims.   *Richter*, 562 U.S. at 101 (quotation omitted).

B.      Jury Instructions

Petitioner's second claim concerns the trial court's failure to give a

voluntary manslaughter instruction.   He argues that the trial court violated his due process right to present a defense by failing to give the instruction and that his attorney was ineffective in failing to object to the ruling.

Reviewing Michigan law, the Michigan Court of Appeals noted that, to prove a defendant committed voluntary manslaughter, "'one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions.'" *Sanders*, 2015 WL 5567977 at *2 (quoting *People v. Reese*, 491 Mich. 127, 143 (2012)).   The burden of proof to show provocation is on the defendant.   *People v. Mendoza*, 468 Mich. 527, 535 (Mich. 2003). "[T]he degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason."   *Sanders*, 2015 WL 5567977 at *2 (quotation omitted).

The Michigan Court of Appeals held that the evidence did not support a voluntary manslaughter instruction:

> The trial court's decision not to submit a voluntary manslaughter instruction to the jury was proper because there was insufficient evidence of legally adequate provocation. There was no evidence of a physical confrontation between defendant and Kendrick.   There was no evidence that anyone threatened defendant, brandished a weapon at him, or shot at him, although shell casings from more than one caliber of

weapon were found at the scene.  There was no evidence of a verbal confrontation between defendant and Kendrick that would cause a rational person to act in the heat of passion. ... And even if Kendrick's alleged assault of defendant's cousin was legally adequate provocation, the record indicates that a sufficient "cooling off" period had elapsed "during which a reasonable person could have controlled his passions."  *See People v. Pouncey*, 437 Mich. 382, 392; 471 N.W.2d 346 (1991).  The cousin called defendant, who drove to the scene of the shooting and spoke with several people before confronting and ultimately shooting Kendrick and Smith. During that interlude, a reasonable person could have reflected on the situation and controlled his passions.  Thus, the trial court correctly concluded that a voluntary manslaughter instruction was unwarranted.  Accordingly, defendant's ineffective assistance of counsel argument premised on his counsel's agreement with the trial court that a voluntary manslaughter instruction was not warranted is also without merit.

*Sanders*, 2015 WL 5567977, at *2-3.

The Michigan Court of Appeals' opinion was not contrary to, or an unreasonable application of, Supreme Court precedent.  "Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief."  *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012), citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[T]he Constitution does not requires a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *see also McMullan v. Booker,* 761 F.3d 662, 667 (6th Cir. 2014).  Even where a lesser offense

instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc).   Relief lies for such a claim only when the "instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates due process."   *Id.*   (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).   Where, as here, a state appellate court has assessed the necessity and adequacy of a particular jury instruction under state law, a federal habeas court cannot question that state-law finding.   *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003).

The Michigan Court of Appeals' conclusion that the evidence did not support a voluntary manslaughter instruction is supported by the record. Petitioner has not established that the jury instructions, taken as a whole, rendered his trial fundamentally unfair.   *See Estelle*, 502 U.S. at 72 (a requested jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record") (internal quotation marks and citation omitted)).   Further, because the jury instructions were not improper, Petitioner fails to establish that defense counsel was ineffective in failing to object.   *See Coley v. Bagley*,

- 11 -

706 F.3d 741, 752 (6th Cir.2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").   Petitioner is not entitled to habeas relief on this claim.

C.      Prosecutorial Misconduct

Next, Petitioner argues that the prosecutor improperly shifted the burden of proof to the defense by asking a police witness if the defense requested ballistics testing on shell casings recovered from the scene and by commenting in closing argument that defendant did not explain why he left Michigan for eight months after the shooting or if he had ever owned or fired a gun.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).   *Parker v. Matthews*, 567 U.S. 37, 45 (2012).   In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.,* quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).   This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155, quoting *Harrington*, 562 U.S. at 103.

Regarding shell casings recovered from the scene, the prosecutor asked a police witness, "Did the defense attorney ever call you and say I would like to have these bullets examined, can you see what you can do?" *Sanders*, 2015 WL 5567977 at *4. The officer responded, "No he did not." *Id.* The trial court sustained defense counsel's objection, but defense counsel did not request, and the trial court did not give, a curative instruction. The Michigan Court of Appeals held that the question improperly shifted the burden of proof to the defense, but that Petitioner was not prejudiced by the single, brief question. *Id.* This decision was not contrary to, or an unreasonable application, of Supreme Court precedent. The improper question was brief and isolated and, although a curative instruction was not delivered at the time, the jury was instructed before deliberations that the prosecution bore the burden of proof. Under the totality of these circumstances, the prosecutor's question did not infect the trial with unfairness.

Next, Petitioner argues that the prosecutor improperly shifted the burden of proof during closing argument. Petitioner testified in his own

defense.   The entirety of his trial testimony is set forth here:

>   Defense counsel: Would you state your name for the record, please?
>
>   Petitioner: Timothy Sanders.
>
>   Defense counsel: Mr. Sanders, can you tell me where you were on or about January the 16th, 2012?
>
>   Petitioner: Warren and Connor projects.
>
>   [A brief exchange between trial court judge and Petitioner regarding placement of microphone.]
>
>   Defense counsel: On that day did you have contact with the person who's been described as the deceased in this case?
>
>   Petitioner: Yes, sir.
>
>   Defense counsel: Did you or did you not speak to him?
>
>   Petitioner: Yes, sir.
>
>   Defense counsel: No further questions.

(ECF No. 7-7, PageID.950.)   The prosecution did not cross-examine

Petitioner.

During closing argument, the prosecutor commented that Petitioner's

testimony lacked any information relevant to his defense:

>   In all of my years, 26 years as a prosecutor, 300 murder cases. Never, never has a defense been, has a defendant been called to the witness stand, ask[ed] his name; did you know the victim; did you talk to him; no further questions.   I mean, that's a prosecutor's dream because we can't comment upon a

defendant's silence.   When a defendant doesn't take the
stand, we can't say to you, ladies and gentleman, why didn't he
take the stand?   Why didn't he tell you where he was at that
date?   Why didn't he tell you whether or not he's ever owned a
gun?   Why doesn't he tell you whether, whether he's ever fired
a gun?   Why didn't he tell you where he went afterward?
Where did he do [sic] afterward?   Where did he go the next
day?   Why was he in Ohio?   Why did he have his attorney
say he'd turn him in and he didn't turn himself in?   So this guy
takes the stand, it's a prosecutor's dream.   It's a one in a
million.   One in a million.

* * *

It's a one in a billion.   It'll never happen again. So we made
history here. [Defense counsel] called his client and he places
him under oath and never asked him[,] did you shoot
[Kendrick]?   Never asked him.   Calls him as a witness.   I
don't have to ask him anything.   [Defense counsel] calls it [his]
trick.   This trial is not about tricks.   This guy takes the witness
stand, he's looking at you and he never says I didn't do it.   I
didn't do it.   And if he didn't do it [,] he would have told you
that.   [Defense counsel] didn't even ask him[,] did you do it[?]
He didn't even say to you why he arrived when he arrived.   He
doesn't say to you[,] I went to Ohio for other reasons.

*Sanders*, 2015 WL 5567977 at *4.

The Michigan Court of Appeals held that the prosecution's argument

was proper because Petitioner elected to testify:

Although the constitutional right against self-incrimination
prevents the prosecution from commenting on a criminal
defendant's *refusal* to testify, "[i]n general, where a defendant
'takes the stand and testifies in his own defense, his credibility
may be impeached and his testimony assailed like that of any
other witness....'"   *People v. Fields*, 450 Mich. 94, 110; 538
NW2d 356 (1995) (footnote omitted) [quotation omitted].

- 15 -

Moreover, prosecutorial commentary on a testifying defendant's failure to present evidence to corroborate a defense theory is proper and not "violative of due process." *Fields*, 450 Mich. at 112. "Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof." *Id.* at 115.

Defendant's theory of the case was actual innocence – that someone else was the shooter.   The prosecutor argued that, although defendant testified, he provided no corroboration for that defense theory. ... The prosecution's argument did not improperly shift the burden of proof.   Instead, it questioned why defendant, having elected to testify, presented no testimony to support his defense.   That is, defendant advanced a theory of actual innocence and testified at his trial, yet he did not corroborate his defense theory.   The prosecutor's "argument on the inferences created does not shift the burden of proof."   *Id.*

*Sanders*, 2015 WL 5567977, at *5.

The Michigan Court of Appeals' rejection of this claim was not an unreasonable application of *Darden.*   "[W]hen [a defendant] assumes the role of a witness, the rules that generally apply to other witnesses – rules that serve the truth-seeking function of the trial – are generally applicable to him as well."   *Portuondo v. Agard*, 529 U.S. 61, 69 (2000) (quotation and citation omitted).   A testifying defendant's testimony may be "assailed like that of another witness."   *Id.* (quotation omitted).   A prosecutor may highlight weaknesses in a defense case by pointing out the absence of supporting testimony or documents.   *United States v. Forrest*, 402 F.3d

678, 686 (6th Cir. 2005).   The prosecutor's argument did not shift the

burden of proof to Petitioner.   Instead, the prosecutor pointed out that

Petitioner's defense of actual innocence was unsupported by any

substantial evidence including his own testimony.   The prosecutor's

comments on the lack of support for the defense did not shift the burden of

proof to the defendant.   *See Traylor v. Price*, 239 F. App'x 235, 239 (6th

Cir. 2007). ("[W]here a defendant testifies at trial and advances an

alternative theory of the case that would exonerate him from the crime,

prosecutorial comments on the validity of the theory do not shift the burden

of proof to the defendant.").   Habeas relief is denied on this claim.

### D.     Newly Discovered Evidence

In his fourth claim, Petitioner argues that he should be granted a new

trial based upon newly-discovered evidence.   The Michigan Court of

Appeals remanded the case to the trial court for an evidentiary hearing

concerning the new evidence.   (ECF No. 7-11, PageID.1275.)

At the evidentiary hearing, Sedric Bell-Gill testified that he witnessed

the shooting and that Petitioner's half-brother Timothy Carpenter was the

shooter, not Petitioner.   The trial court denied the motion for new trial

finding that Bell-Gill's testimony was contradicted by overwhelming

evidence and that his testimony was not credible.   *See* Op. Denying Mot.

- 17 -

for New Trial (ECF No. 7-11, PageID.1283-1287.)

The Michigan Court of Appeals affirmed the trial court's decision:

The trial court did not abuse its discretion by denying defendant's motion for a new trial premised on this purported "newly discovered eyewitness." Since witness credibility falls within the sound discretion of a trial court considering a motion for a new trial, it was proper for the trial court to evaluate Bell-Gill's credibility, and it would be improper for this Court to second-guess that credibility determination. ... Indeed, we afford particular deference to credibility determinations made by a trial court judge where, as here, a conflict between the testimony of two witnesses is involved. *See People v. Farrow*, 461 Mich. 202, 209; 600 NW2d 634 (1999).   Bell-Gill's testimony is directly contrary to Smith's eyewitness account and identification of defendant as the shooter.   The trial court, with its unique opportunity to appraise the credibility of both Bell-Gill and Smith, found that Bell-Gill's testimony was "incredible."   It further concluded that his testimony was inconsistent with his prior statement to the FBI and with the physical evidence. Moreover, even if believed, Bell-Gill's testimony was not strong evidence.   He admitted that he saw only one shot fired by Carpenter, and did not actually witness whether that shot struck anyone or whether Carpenter fired additional shots.   But Smith clearly identified defendant as the shooter and witnessed the entire event.   As the trial court concluded, Bell-Gill's testimony did not make a different result probable on retrial. ... Thus, the trial court did not abuse its discretion when it denied defendant's motion for a new trial.

*Sanders*, 2015 WL 5567977 at *6.

A claim that a state court misapplied state law in denying a motion for new trial is premised on state law issues and, therefore, not subject to habeas review.   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).    Claims

of innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*

In *House v. Bell*, the Supreme Court declined to answer the question left open in Herrera – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim"). This is not a capital case and the Sixth Circuit, citing *Herrera* and *House*, has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall*, 247 Fed. App'x 709, 712 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a

freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent.").   Consequently, Petitioner's newly-discovered evidence claim is not cognizable on federal habeas review.

Moreover, on habeas review, this Court may not "redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."   *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).   The trial court determined that Bell-Gill was not credible. Deferring to that finding, the Court sees no error in the denial of the motion for new trial.

IV.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.   A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).   A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).   In this case, the Court concludes

that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

V.      Conclusion

For the reasons set forth above, the court finds that Petitioner is not entitled to habeas corpus relief or to a certificate of appealability. Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus and a certificate of appealability are DENIED.

Dated:   April 21, 2020

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 21, 2020, by electronic and/or ordinary mail and also on Timothy Michael Sanders #508153, Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

s/Barbara Radke
Deputy Clerk

---